SEMNAR & HARTMAN, LLP
Babak Semnar (SBN 224890)
bob@temeculaconsumerattorneys.com
Jared Hartman (SBN 254860)
jared@temeculaconsumerattorneys.com
41707 Winchester Road, Suite 201
Temecula, CA 92590
Telephone: (951) 293-4187; Fax: (888) 819-8230

Attorneys for Plaintiff, ELSA PASTRANO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELSA PASTRANO, an individual,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.;<br><br>　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>1. **FEDERAL FAIR CREDIT REPORTING ACT,**<br>2. **CALIF. CONSUMER CREDIT REPORTING AGENCIES ACT** |

TO THE CLERK OF THE COURT, ALL PARTIES, AND THE HONORABLE CALIFORNIA SUPERIOR COURT JUDGE:

Plaintiff, ELSA PASTRANO, an individual, by and through her attorneys of record, hereby files the instant First Amended Complaint and alleges as follows.

## INTRODUCTION

1. ELSA PASTRANO, ("Plaintiff"), by and through her attorneys, brings this Complaint against Defendants EQUIFAX INFORMATION SERVICES, LLC's (hereinafter "EQUIFAX"), TRANS UNION, LLC (hereinafter "TU"), and EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter "EXPERIAN") for failing to conduct a reasonable investigation into a written dispute in violation of 15 U.S.C. §1681i of the

1
**Complaint for Damages and Injunctive Relief**

FCRA and Calif. Civ. Code §1785.16 of the CALIF. CCRAA.

## JURISDICTION & VENUE

2. This action arises out of all Defendants' violations of the FCRA, over which the U.S. District Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p. Jurisdiction arises pursuant to 28 U.S.C. §1367 for supplemental state claims.

3. Because all Defendants regularly conduct business within the County of Riverside, personal jurisdiction is established.

4. Because all tortious conduct occurred while Plaintiff resided in the County of Riverside, and witnesses are present within the County of Riverside, venue properly lies in this court pursuant to 28 U.S.C. §1391.

## PARTIES & DEFINITIONS

5. Plaintiff is a natural person whose permanent residence is in the County of Riverside, is a natural person, and is therefore a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) of the Federal FCRA.

6. As far as this matter pertains to Plaintiff's "consumer credit reports", as that term is defined by Calif. Civ. Code § 1785.3(c) of the California CCRAA and 15 U.S.C. § 1681a(d)(1) of the Federal FCRA, in that inaccurate misrepresentations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing Plaintiffs' eligibility for, among other things, credit to be used primarily for personal, family, or household purposes, and employment purposes.

7. As far as this matter pertains to the California CCRAA and the Federal FCRA, all Defendants are a partnership, corporation, association, or other entity, and are therefore a "person" as that term is defined by Calif. Civ. Code § 1785.3(j) of the California CCRAA and 15 U.S.C. § 1681a(b) of the Federal FCRA.

**Complaint for Damages and Injunctive Relief**

8. Defendants EQUIFAX, TU, and EXPERIAN are each a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) of the Federal FCRA and Calif. Civil Code § 1785.3(d) of the California CCRA, as they each regularly engage in whole or in part, for monetary fees, dues, or on a cooperative nonprofit basis, in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

## FACTUAL ALLEGATIONS

9. At some point in the year 2004, Plaintiff and her now ex-husband, James Yoshida, obtained a home mortgage loan.

10. As part of the dissolution of their marriage, in early 2017, Plaintiff and her ex-husband, James Yoshida, agreed for James to take the necessary steps to remove Plaintiff as an obligor from the home mortgage loan related to the real estate property identified as 17625 Bobrick Avenue, City of Lake Elsinore, CA.

11. Plaintiff has not resided in that property since sometime in 2008, because Plaintiff and James divorced at that time.

12. The mortgagee instructed James to have Plaintiff execute and record an interspousal transfer deed so that he could then take the necessary steps to have Plaintiff removed from the loan.

13. On May 15, 2017, Plaintiff signed and notarized an interspousal transfer deed.

14. The interspousal transfer deed was recorded with the County of Riverside County Recorder's Office on May 17, 2017.

15. The interspousal transfer deed had the effect of conveying to James all of Plaintiff's rights and interests in the residence and real estate.

16. Attached as "Exhibit A" is a true and correct copy of the interspousal transfer deed on record with the County Recorder's Office.

17. On December 1, 2017, a modification agreement was recorded with the County Recorder's Office related to the home mortgage loan for the subject property located at 17625 Bobrick Avenue, City of Lake Elsinore, CA (hereinafter referred to as "the recorded modification agreement").

18. The recorded modification agreement specifically removed Plaintiff as an obligor upon the account.

19. The recorded modification agreement was signed and notarized by both James and the mortgagee.

20. James was legally authorized to negotiate and execute the recorded modification agreement without Plaintiff's involvement as a result of Plaintiff's executing and recording the May 2017 interspousal transfer deed.

21. The recorded modification agreement shows that the only obligor upon the loan after modification is Plaintiff's ex-husband, James Yoshida.

22. A true and correct copy of the recorded modification agreement is attached hereto as "Exhibit B".

23. Furthermore, on February 18, 2020, Plaintiff received a Chapter 7 bankruptcy discharge in the U.S. Bankruptcy Court for the Central District of California, Case Number 6:19-bk-19779.

24. During the bankruptcy proceedings she did not seek any exemption or reaffirmation agreement for the property subject of the mortgage account, and therefore any alleged obligations of Plaintiff on the account were discharged as of February 18, 2020.

25. Because Plaintiff believed that she had been removed as an obligor from the home mortgage loan, Plaintiff began looking to refinance her automobile loan in or about June 2024.

26. Plaintiff was hopeful she would be able to secure a more favorable interest rate and monthly payment on her automobile loan since enough time had passed from her February 2020 bankruptcy discharge that her credit score had begun to climb.

27. Unfortunately, however, Plaintiff suddenly received notification that her credit score had recently plummeted.

28. Plaintiff looked into her credit reports and was shocked to discover that all of her credit reports were falsely reporting that she is still a current obligor upon the home mortgage loan and also falsely reporting that she is presently in default upon the home mortgage loan and has suffered several months of default upon the home mortgage loan in the recent years.

29. However, it is absolutely and undeniably false for anyone to claim that Plaintiff is still a current obligor upon the home mortgage loan and has been in default upon the loan at any point after 1) she was removed as an obligor via the loan modification in December 2017 and 2) her Chapter 7 bankruptcy discharge in February 2020.

30. Consequently, Plaintiff has been unable to seek any favorable consumer credit and/or refinancing of her current consumer credit accounts.

31. Plaintiff thereafter delivered written dispute letters to each of the three consumer credit reporting agencies, EQUIFAX, EXPERIAN, and TU dated June 12, 2024.

32. Plaintiff's written disputes specifically explained that she should not be reported as a current obligor upon the account because 1) she was removed as an obligor via the loan modification in December 2017 and 2) her Chapter 7 bankruptcy discharge in February 2020.

33. EQUIFAX, EXPERIAN, and TU all received Plaintiff's dispute letters on June 17, 2024.

34. However, EXPERIAN has completely failed to respond or take any action at all in response to Plaintiff's written dispute.

35. On August 13, 2024, Plaintiff checked her EXPERIAN credit report and was shocked to discover that absolutely no changes had been made and that she is still reporting by EXPERIAN as a current obligor upon the account and is presently in

5
**Complaint for Damages and Injunctive Relief**

default and has a history of several months of default.

36. TU has updated the account in her credit file to show that the account is a positive account, but still persists in reporting her as a current obligor upon the account.

37. Even though TU has updated the account in her credit file to show that the account is positive, it remains false for TU to persist in reporting her as a current obligor upon the account because 1) she was removed as an obligor via the loan modification in December 2017 and 2) her Chapter 7 bankruptcy discharge in February 2020.

38. TU's actions at persisting in falsely reporting that Plaintiff is a current obligor upon the account continues to cause harm to Plaintiff because it makes her debt to income ratio look worse for her by falsely claiming she owes more debt overall than what she actually does owe.

39. Furthermore, EQUIFAX responded on June 20, 2024 by lying about not being able to find a credit file for her in response to her written dispute based on the information she provided in her written dispute.

40. PLAINTIFF knows this is a lie because EQUIFAX has processed written disputes for her in the past based on the exact same information she provided in her written dispute.

41. Moreover, Plaintiff is informed and believes that EQUIFAX maintains a consumer file for each consumer under an internal identification number that is uniquely assigned by EQUIFAX, and that all personal identification information (such as name, aliases, address, history of previous addresses, dates of birth, social security numbers, employer, and previous employers) for each individual consumer is connected to the unique internal identification number that EQUIFAX assigns to each consumer.

42. Plaintiff is further informed and believes that any single piece of personal identification information can be used to locate the consumer's credit file, because all of the consumer's personal identification information is associated with the unique internal file number assigned by EQUIFAX.

43. Therefore, Plaintiff's providing to EQUIFAX in a typed letter her name, her date of birth, and the last four digits of her social security number were all sufficient for EQUIFAX to verify her identity in order to process her dispute letter, just as it has done for her in the past based on the exact same information.

44. Plaintiff and her counsel are aware of several other consumers who have received substantially similar dispute rejection letters from EQUIFAX based on the same improper bases described above.

45. For these reasons, Plaintiff believes that EQUIFAX has a pattern and practice of improperly rejecting dispute requests on these pretextual bases, in order to reduce its (legally mandated) compliance burden and/or to steer consumers to a dispute resolution system which requires that they give up their right to sue in court in favor of arbitration.

46. PLAINTIFF then provided EQUIFAX with another written dispute dated July 12, 2024.

47. This July 2024 written dispute resulted in EQUIFAX merely updating the account to reflect that it was discharged by way of Chapter 7 Bankruptcy, but EQUIFAX failed to take any action over the fact that Plaintiff had specifically notified EQUIFAX that she was removed as an obligor upon the account by way of the December 2017 modification agreement.

48. Instead, EQUIFAX should have completely removed and deleted the account from Plaintiff's credit file based on the December 2017 modification agreement.

49. As a result of the disputed and inaccurate information remaining in Plaintiff's consumer credit file, as a direct result of all Defendants' failure to conduct a reasonable re-investigation into Plaintiff's dispute letters and maintain unreasonable procedures to process dispute letters, Plaintiff has been harmed by way of inaccurate and derogatory information remaining in her credit file that creates an undeniably inaccurate picture of her standing as a consumer, and creates an undeniably inaccurate

picture of her creditworthiness.

50. Plaintiff's consumer credit score will remain lower than what it should be, as a direct result of her credit file considering the home mortgage loan against her favor in the debt to income ratio.

51. Moreover, Plaintiff remains harmed in that she is still unable to qualify for the automobile refinancing loan that she needs to secure lower interest rates and lower monthly payments.

52. Potential creditors will evaluate her creditworthiness as if her debt to income ratio is much worse than what it actually should be, because if the account was not reported against her as a joint responsibility account then her debt to income ratio would be much more favorable to her.

53. Consequently, Plaintiff's consumer credit score is lower than it otherwise should be, because all consumer credit scoring models factor debt to income ratio such that a higher amount of debt obligations compared to a lower income result in a lower credit score because the consumer appears to be a credit risk.

54. Plaintiff has also been damaged by way of mental anguish and emotional distress such as anger, nervousness, anxiety, embarrassment, loss of sleep, and feelings of distraught and hopelessness that she would never be able to qualify for a home loan to purchase the home that she desired in order for provide for her son.

55. The emotional distress suffered by Plaintiff has resulted in physical manifestations such as headaches, increased heart rate, tears welling in her eyes, loss of focus on tasks at hand, loss of sleep, fatigue, and drowsiness, among others.

56. The allegations of emotional distress identified above are not merely conclusions, as they are assertions of fact of what Plaintiff did, in fact, suffer and feel as a direct result of Defendants' violations.

57. As is also clearly explained above, Plaintiff has suffered actual damages by way of loss of credit, loss of creditworthiness, denial of credit, and reduction in credit score.

58. Experts within the industry will confirm Plaintiff's suffering of such actual damages as a result of the false and inaccurate reporting of Plaintiff as a joint obligor upon the loan.

**FIRST CAUSE OF ACTION**
**FEDERAL FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681i**
**(as against all Defendants)**

59. Plaintiff repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

60. Plaintiff submitted a written dispute to the consumer credit reporting agency EXPERIAN, and has received delivery confirmation from the U.S.P.S.

61. Plaintiff submitted a written dispute to the consumer credit reporting agencies EQUIFAX and TU, and has received delivery confirmation from the U.S.P.S.

62. However, EXPERIAN completely failed to comply with their requirements under 15 U.S.C. §1681i by failing to take any action at all in response to the dispute and failing to provide any response at all to Plaintiff after receiving the dispute.

63. EQUIFAX and TU failed to comply with their requirements under 15 U.S.C §1681i by failing to conduct reasonable re-investigations within 30 days because of the following: 1) EQUIFAX merely reported that the account was discharged in bankruptcy, which fails to take into account at all the modification agreement that removed Plaintiff as an obligor, and 2) TU merely updated the account to show that the account is positive but that she remains an obligor.

64. Plaintiff is informed and believe that these violations were negligent at a minimum, but were also reckless because each Bureau acted with a high degree of risk that their failures to act lawfully would result in the information incorrectly remaining on Plaintiff's credit reports and continue to cause her financial harm and emotional harm.

65. Plaintiff has been damaged by way of mental anguish and emotional

distress such as anger, nervousness, anxiety, embarrassment, loss of sleep, and feelings of distraught and hopelessness that she would never be able to qualify for a home loan to purchase the home that she desired in order for provide for her son.

66. The emotional distress suffered by Plaintiff has resulted in physical manifestations such as headaches, increased heart rate, tears welling in her eyes, loss of focus on tasks at hand, loss of sleep, fatigue, and drowsiness, among others.

67. The allegations of emotional distress identified above are not merely conclusions, as they are assertions of fact of what Plaintiff did, in fact, suffer and feel as a direct result of Defendants' violations.

68. As is also clearly explained above, Plaintiff has suffered actual damages by way of loss of credit, loss of creditworthiness, denial of credit, and reduction in credit score.

69. Experts within the industry will confirm Plaintiff's suffering of such actual damages as a result of the false and inaccurate reporting of Plaintiff as a joint obligor upon the loan.

## SECOND CAUSE OF ACTION
### CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT
### Calif. Civ. Code § 1785.16
### (as against all Defendants)

70. Plaintiff repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

71. Plaintiff submitted a written dispute to the consumer credit reporting agency EXPERIAN, and has received delivery confirmation from the U.S.P.S.

72. Plaintiff submitted a written dispute to the consumer credit reporting agencies EQUIFAX and TU, and has received delivery confirmation from the U.S.P.S.

73. However, EXPERIAN completely failed to comply with their requirements under Calif. Civ. Code § 1785.16 by failing to take any action at all in response to the dispute and failing to provide any response at all to Plaintiff after receiving the dispute.

**Complaint for Damages and Injunctive Relief**

74. EQUIFAX and TU failed to comply with their requirements under Calif. Civ. Code § 1785.16 by failing to conduct reasonable re-investigations within 30 days because of the following: 1) EQUIFAX merely reported that the account was discharged in bankruptcy, which fails to take into account at all the modification agreement that removed Plaintiff as an obligor, and 2) TU merely updated the account to show that the account is positive but that she remains an obligor.

75. Plaintiff is informed and believe that these violations were negligent at a minimum, but were also reckless because each Bureau acted with a high degree of risk that their failures to act lawfully would result in the information incorrectly remaining on Plaintiff's credit reports and continue to cause her financial harm and emotional harm.

76. Plaintiff has been damaged by way of mental anguish and emotional distress such as anger, nervousness, anxiety, embarrassment, loss of sleep, and feelings of distraught and hopelessness that she would never be able to qualify for a home loan to purchase the home that she desired in order for provide for her son.

77. The emotional distress suffered by Plaintiff has resulted in physical manifestations such as headaches, increased heart rate, tears welling in her eyes, loss of focus on tasks at hand, loss of sleep, fatigue, and drowsiness, among others.

78. The allegations of emotional distress identified above are not merely conclusions, as they are assertions of fact of what Plaintiff did, in fact, suffer and feel as a direct result of Defendants' violations.

79. As is also clearly explained above, Plaintiff has suffered actual damages by way of loss of credit, loss of creditworthiness, denial of credit, and reduction in credit score.

80. Experts within the industry will confirm Plaintiff's suffering of such actual damages as a result of the false and inaccurate reporting of Plaintiff as a joint obligor upon the loan.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant, and Plaintiff be awarded damages as follows:

1. Actual damages in the amount of $250,000.00, or as the jury may allow, jointly and severally against all Defendants;

2. Plus statutory damages of $1,000.00 for each individual willful violation of the Federal FCRA, from each Defendant individually, pursuant to 15 U.S.C. §1681n(a)(1)(A);

3. Plus punitive damages in an amount to be determined by a jury for willful violations of the Federal FCRA, from each Defendant individually, pursuant to 15 U.S.C. §1681n(a)(2);

4. Plus punitive damages of $5,000.00 for each individual willful violation of Calif. Civ. Code § 1785.16, from each Defendant individually, pursuant to Calif. Civ. Code § 1785.31(a)(2)(A)-(C);

5. Injunctive relief to order all Defendants to cease reporting Plaintiff as an obligor upon the account, pursuant to Calif. Civ. Code § 1785.31(b);

6. Any reasonable attorney's fees and costs to maintain the instant action.

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

SEMNAR & HARTMAN, LLP

DATED: 8-13-24

/s/ *Babak Semnar*
BABAK SEMNAR, ESQ.
Attorneys for Plaintiff

**Complaint for Damages and Injunctive Relief**